I suspect this is probably the most people I've had in any decade if we compiled my arguments. So how many are not the attraction here about how many arguments have you made? I know you've made a lot of many fewer than my friend, but you know, 75 or 80. But yeah, if you put them all together, I might get a full courtroom. OK, I'm here for Mr. Draper. The issue is whether magistrate judges initiated discussion of a plea offer at the plea hearing violated Rule 11 C1, prejudiced Mr. Draper and requires vacation of the conviction. You agree, don't you, that we're reviewing for plain error? Absolutely, Your Honor. I said that in my brief. I agree. I think we can win on plain error. I think we should win on plain error, but we are reviewing for plain error. Mr. Draper came to the guilty plea hearing, plea guilty, without a plea agreement. On the very first page of the transcript, he says to the judge, I'm going to plead guilty. I plead guilty. He says it two times. The judge then asks counsel, have you conveyed all plea offers? I'm not sure why the judge is asking that question at a case in which the defendant is there with the intention of pleading guilty without an agreement. But that question by itself, while I have problems with it, doesn't violate it. Counsel says I conveyed them. The only offer was to plead to the indictment. Prosecutor says, well, to plead with an agreement to the indictment and with a couple of other things, which included a waiver of appeal and the possibility of a 5K. Again, maybe if we could stop there, this would be okay. But the magistrate judge doesn't stop. He keeps bringing the subject up. He wants to know why. And even after a couple more questions, and Mr. Draper says, I reject it, sir, he tells him firmly, I've rejected that agreement. They never discussed the terms of the agreement, did they? Well, they do, because the plea waiver provision was the sticking point. That is what Mr. Draper did not want. That is what was made very clear on the record by his attorney. He was iffy on signing a factual basis the day before, but he was willing to plead. And of course, the government just has to submit a factual basis, and then the court decides on its own whether that satisfies the statute. As I recall, though, early on, Mr. Draper indicated he wasn't sure he had heard about one plea offer. How did he say it exactly? Let me grab that. It's not that early on. It's on Record and Appeal 895. He says, and this is after the judge has been discussing with the prosecutor and defense attorney, I think even at that point, they've gone too far. There's simply no reason to be discussing this. Rule 11C makes it very clear a judge is not to be involved in plea negotiations. Participate in? Participating. He is, when he starts talking about, and up to this point that Judge Clark was talking about, but I think this is where it gets bad. At Record and Appeal 95, he does say, as of right now, I didn't know the plea agreement was rejected, Judge. Now, the context shows he's confused, but that's okay. At that point, maybe the judge, not maybe, the judge should have said, let's take a recess. Mr. Wade, I need you to go back and talk with your client again, because maybe there's some miscommunication. The context shows that what Mr. Draper meant was no one had shown him paperwork, that the prosecutor was standing there with paperwork in her hand. It appears that Mr. Wade had conveyed the offer orally to Mr. Draper at the jail. But when he's hearing this discussion, he sees the paperwork, he says, I didn't know it was rejected. I'm a little more sympathetic to the magistrate here, because certainly you do want any judge taking a plea to sort out confusion, number one. But much more importantly, with the Supreme Court telling rearrangement judges that they've got to find out if offers were made, that the defendant might not have heard, the whole ineffectiveness world fry. Magistrates do need to make some inquiry, unless you're proposing a rule they don't. So having said that, here's my question. What Rule 11c, you can't participate case, would you cite as most appropriate? And the reason I ask that is because I read those cases to say, you can't tell a defendant, I think you're guilty, or this is a good deal, you better take it. None of that happened. He was just saying, have you heard everything? That's what Fry says to do. Okay, I would say the strongest case is Miles, in which the court said, by trying to facilitate a plea bargain, the judge indicated he desired an agreement. That is pressure enough. Desired, but the magistrate never says, I want you to plead here. Neither did the judge in Miles. The judge in Miles suggested what he would accept as appropriate sentences in a plea agreement. Because he had rejected the plea agreement, because he thought the government had offered terms of imprisonment that were too low. And I think if you look at the entire context here, when the judge is saying, I will let you plead, I'll still let you do it. He is suggesting, the problem is, he is suggesting to Mr. Draper that Mr. Draper is doing something wrong by pleading without an agreement. And that keeps happening. After he says, I'll still let you, Mr. Draper says, at Record Appeal 96, I have rejected it, sir. The court still comes back to it. He says, well, is it because you didn't want to sign the factual basis? And at this point, we get Mr. Draper saying to the court, if I may ask the prosecution through the court, what is the offer that they have as of right now, besides me signing the factual basis and stuff, that I understand if I may? You see what I'm saying? He's becoming a broker as to whether or not there will be an agreement. But you agree they have to ask about, were offers communicated to you? I don't know that they do, honestly, Your Honor. Missouri versus Frye was a state habeas case. It was 28 USC, section 2254, habeas. What the Supreme Court suggested was that if it was possible, a good practice would be to memorialize plea offers. So they could do that by the prosecution making them in writing, or they could do that by filing offers with the court. But nowhere does it, Frye suggests, that federal courts are now freed from Rule 11 and can be discussing a plea agreement that hasn't been reached. That's the problem. The only time a federal court is supposed to discuss a plea agreement is when there is an agreement. And that didn't happen here. Mr. Draper had made up his mind. He was coming to court to plead guilty. He had rejected the agreement. That is not the court's business. Perhaps, as a prophylactic rule under Frye, the court could use its supervisory powers to suggest that filing them would be better. But this sort of prolonged ten page discussion about why didn't you take an agreement, are you sure you don't want an agreement, you could still have an agreement, let's hear the prosecutor tell you what the terms of the agreement might be. That's creating in the defendant's mind, in Mr. Draper's mind, the impression that the judge thinks he's doing something wrong by pleading without a plea agreement. Because why would we be talking about it for so long? He didn't want the appeal waiver, right? I'm sorry? He didn't want the appeal waiver. That's correct, Your Honor. We, in our discretion, can still reach the merits, as I understand the law. So let's say we say, fine, he doesn't have the provision that stops him from appealing. We'll just decide the Rule 11c problem. And then you say the best case that shows reversible error is Miles? I think so, because I think that by trying to facilitate a plea bargain, the judge indicated he is brokering, essentially, a plea bargain. When Mr. Draper says he should say, he should have said it long before when Draper said I rejected, sir, and I want to plead guilty, sir. But by making himself essentially a broker, having the prosecutor talk, the prosecutor says, well, we need to get his refusal on the record. There's no authority for that, Your Honor. That's not a proper discussion at a plea hearing. I still think 11c, I do think there's some friction with Frye. But when I look at the C, is the judge coercing, favoring, desiring, saying you ought to, as distinct from saying, have you understood everything that's available to you, the Frye inquiry? And it looked to me like this magistrate was just trying to make sure. And once a judge says, doesn't it prove he's not participating when he says, okay, stop. You go out of the room and talk to your lawyer. No. That shows he's not participating. No. In fact, we know that from this court's Rodriguez decision, which is at 197, Fed Third, in which the court says, we're not going to consider the recess that was called after the discussion as a mitigating effect. That the fact that the judge is getting involved, the fact that the judge is, again, not coercing, I don't think is quite the test, Your Honor. And I don't think that the case law shows that. But I think what Miles shows, and Pena shows, and another one that I can't recall, sure, is that Rule 11 is there to protect against the danger of coercion. And what our cases say, Rodriguez says it, Pena says it, is that what's important is what the effect can be on the defendant. Again, and I believe it's Pena quoting Miles, says it's exactly the indeterminate effect of the judge's desires on what, on the defendant's mind, that caused the problem. So I don't think the issue, let's say the judge says, wait, I think you might not be an American citizen. Nothing wrong with the judge saying, stop, on this whole plea, go make sure you discuss the consequences of being an alien, because the conviction may get you deported. That's not participating in the plea? That's, it's not participating in the plea. It's participating in plea agreement. You think that's violative of Rule 11c? Your question? Yeah. No, absolutely not. In fact, Rule 11b10 requires the court to make that inquiry. It requires the same thing. Did you get all the offer? You disagree. I disagree, sir. And I disagree because we know that two years after, one year after Frye, in Gavila, the Supreme Court says, no, Rule 11c remains a bright line prohibition. You can't do this. So whatever suggestion they made in Frye about memorializing offers or submitting them as sealed documents to the court does not abrogate Rule 11c. And especially to the point of letting a court, an open court, discuss with the defendant and the other lawyers what the terms of the plea might be. Circling back to my initial comment to you, where is the clear or obvious error under the first prong of plain error view? I think the clear error is Rule 11c1 prohibits these types of discussions. There's a body of case law, Your Honor. Rule 11c1, Rule 11 doesn't say that. It says that the court shall not participate in plea discussions or something along that line, akin to what Judge Higginson is asking you. He's not saying, let's talk about the terms of the agreement. He's just saying, are you aware you've got an agreement? Rule 11 says the court must not participate. This court's clear jurisprudence from Adams on says that when the court starts discussing the desirability of a plea agreement, that that's a violation of Rule 11c1, and that's- I'm sorry, go ahead. No, I was going to say that's the error, Your Honor. How did the court discuss the desirability of a plea agreement to him, rather than making sure he knew about it, and then, as Judge Higginson pointed out, saying, y'all need to leave the room and go talk about this, and come back and see me later? Because he keeps coming back to it. And again, Rodriguez and Pena tell us that the important thing is that we lose the appearance, and Miles says this too, we lose the appearance that the judge is impartial, because he keeps talking about, why don't you want this agreement? What is it about the agreement that didn't work out? What are the terms? I'll ask the prosecutor. That's not a proper role for the judge. And in fact, I think we see exactly why the evils, as this court has said, that Rule 11c is aimed at are, you don't want to create the possibility of coercion, let alone real coercion. I'm not saying there was real coercion, but when a judge says something, we all listen really carefully. And our clients think you know more than we do, and usually you do. So when a judge plants that seed of doubt in a man who's come in to say, I want to plead guilty, I don't think that agreement is a good idea. When the judge starts talking about, well, how come? I don't just want to take the agreement. I'll still let you take the agreement. I could talk to the prosecutor about it. When the prosecutor responds by saying, judge, we need to get his decision on the plea offer that we've now given the terms of in court, on the record, this is coercion. Not in a bad way. I'm not saying- Rodriguez, Rodriguez, the judge says, right now he's looking at five years minimum. In about 30 minutes, he's going to be looking at 10 years. That's coercive. We don't have anything like that here. We don't have that here, but we have no reason to have been talking beyond that first question. And it's the- Your time runs out just quickly. Your reply brief does say you're not pressing a sentencing error. No. I mean, I think, you know, he pleaded under the agreement. Our argument is that the plea was invalid. I can't raise the sentencing error. There's no question about that under the agreement that the plea came to. I don't think you should, as I argued, enforce the waiver against the Rule C-1 issue. But, no, I can't raise the sentencing issue because of the agreement. I mean, that's the one of the substantial effect on his rights, or the effect on his The judge, by bringing the plea agreement in that was not on the table, has created the sense in him that, I don't know what I should do. He had made a voluntary decision to plead guilty without an appeal waiver, and that was important to him. And by having this discussion, the judge has planted that seed of doubt, you should maybe take it. And I think- You're not arguing under Frye that it's impermissible for the presiding judge to ask whether all plea offers have been conveyed, are you? I'm not saying it should absolutely be prohibited. I say it should be a very limited question, and you should take the answer of counsel. All right. Thank you. Mr. Lynch, you've saved time for rebuttal. Mr. Stilmop? How many arguments for you? I'm sorry, Your Honor. How many arguments have you made? 128. Okay. Thank you. But I'm still no good at it. May it please the Court, there was no plain or obvious judicial participation error here. Basically, the magistrate judge was only making sure that Draper understood that there had been an offer of a plea agreement. This case is nothing like any of the cases cited by appellant. There's no repeated descriptions of how other defendants have suffered negative consequences, like in Hemphill, when the judge kept bringing up what happened to the Nuttall brothers. There was no proposal of the Court's own plea bargain, as in Pena and Miles. Pena, he was required to settle a civil case before the Court would accept a plea. Miles, he was even more draconian. He was forced to accept more convictions with a much higher sentence before the Court would accept the plea. There were no comments about enhancement, as in Rodriguez. There were no words of encouragement or words of benefit of how the agreement would help him made by the magistrate judge. The theory is here that by raising the issue of the agreement multiple times, he was encouraging the agreement by inference. And Mr. Lynch said that he had made up his mind. Well, if he had made up his mind, there was quite a lot of confusion that was demonstrated here. I mean, even the first question asked to Draper's counsel was confusion. The Court asked, is there an existence of a plea offer? And the counsel's response is, or the question was whether he'd conveyed all the plea offers. And counsel's response was it was to plead to the indictment, which was wrong. There was a plea agreement offer. And so the prosecutor said, in fact, there had been an offer. And then the Court said to Mr. Draper, I'm asking you if an offer has been made to you. And Draper responds, oh, no, sir. No, sir. No offer. And then the Court said, well, the prosecutor just said there had been an offer. And then I think this was important. The Court said, you don't need to look at it. But we're going to make sure that you've heard about it. And you could plead without an agreement or with an agreement. But I need to make sure you knew about the agreement. Rule 11 hasn't been revised post FRI to give a specific instruction on has it? No. So would you agree with me there's tension between FRI saying inquire and Rule 11 saying don't participate? I think, in my best case, is Larrier. Is what? Is Larrier. And I think the FRI and Laffer are discussed in Larrier. And I think what it says there is that the Court should ensure that the defendant knows about the plea agreement offer in order to foreclose ineffective assistance claims. And that Laffer and Fly contemplate documenting plea offers, informing the defendants of their terms, as long as the Court's comments don't go farther and imply that a plea would be preferred. I would think FRI would only be triggered if, or would never be triggered if the first thing that a defense attorney says is, hey, we're here to plead, but we have no plea agreement. What in FRI allows the court to say, well, wait a minute, you've got no plea agreement. Let's discuss the offers that you must have rejected them. I'm sorry, Laffer and Fly require transmission of plea offers, right? But if the defense attorney with defendant next to him says, Your Honor, this is a really difficult one for us to get to. We're pleading straight up. We do not have an agreement. We've thought it all through. We don't. Could a magistrate or a district judge still say, well, let's go over everything that happened to make sure you heard the offers you're telling me you've thought about and rejected? Well- Then defendants will get uneasy. And I think that similarly, that's what happened in this case. Yeah, but that's injecting yourself into the- Well, if the defense counsel says, as you said, we've thought it all out. But then the defendant itself asks questions, or the defendant itself says there's, I don't know about it. But here, I don't- Then I think it's true. The defendant never said, oh, wait a minute, I've got a question. Sounds like they came in, we don't want to plea. But then the magistrate, maybe commendably, says, well, let's talk about that. Well, it was triggered by have you communicated all plea offers. And my question is, what in Rule 11 allows you to ask that unless there's some uncertainty first suggested? I think it's required by Laffer and Frye. And you have a case that says that? No. Yeah. There's a little tension. I think there is tension. And I think that was brought up in two cases. It's been brought up here in Hempel and Laffer. And I think that's- Those are our cases, I agree. Those are your cases. And they say they contemplate documenting plea offers and informing the defendants of their terms as long as they don't go further and imply that a plea would be preferred. Again, because you both have argued many more cases than I ever argued. I'll ask one more question. If Frye hadn't been issued, could the magistrate have asked these questions? Well, I — there's a bright-line rule, right? But all of the considerations, all of the cases are in terms of coercion. All of the cases are in terms of whether he has — the judge has a stake in the plea. The cases are whether he becomes an advocate for the plea in some way. Yeah. And so maybe it would be a technical violation, perhaps. I think the case is most like Larrier. Larrier says that when the court's remarks are made in the context of answering her inquiries, addressing her misunderstandings, and ensuring that she understood her choices, that the questions were not improper, didn't cross the line under a rule of law. That's what I would see. There's even further, as Judge Barksdale mentioned, there was also comment further down the line. Did you know about these offers? And he says, as of right now, no, I don't. I don't know that the plea agreement was rejected. And then he says, I will accept the agreement, and they call a recess, and he goes ahead with the plea. Excuse me. I think here, based on the professed ignorance of both Draper's counsel and Draper, the court saw a need to document the plea offer. And about the reiteration, I'm going to let you plea. Also, the day before, Draper's counsel had filed a motion to extend the plea deadline. I think that could be interpreted as embracing the extension of the plea deadline. So I don't think he's demonstrated plain or obvious judicial participation. I'm sorry, go ahead, and I'll ask you when you finish. No, because I'm switching over, Your Honor. Well, I don't think this is touched upon in the briefs, but here we have a magistrate judge taking a plea to make a recommendation to the district judge, and the district judge accepted the plea. Do you think that plays in, in any way, in plain error review, that it wasn't the person that accepted the plea that? Right. And he wouldn't be offending the person who participated by saying, oh, no, I have second thoughts. I think that would be a factor. I actually think that the plain error burden may even be the most interesting issue in this case. Is plain error burden is showing prejudice to substantial rights. And so the Dominguez-Benitez case says that you're seeking reversal after a guilty plea, a reasonable probability that but for the error, you wouldn't have entered the plea. And then the more specific Davila case, the Rule 11c1 case, is that but for the magistrate's exhortations, and I would say there are no exhortations here, but for the magistrate's exhortations, the defendant would have exercised his right to go to trial. But by his own statements, he can't make the showing. He says, I want my plea vacated. I'll plead guilty without an agreement. And instead, so he can't meet the Davila test or the Dominguez-Benitez. I think under the circumstances of this case, it would look to be, his prejudice was, he would have just pleaded, made an open plea as opposed to taking a plea with an appeal waiver in it. I don't have a problem with that. I think there's prejudice if there was plain error. But then you're testing, your test is that but for the Rule 11 error, I would have received a lower sentence. That's his prejudice. His prejudice is, if he hadn't received a higher sentence, he wouldn't be, he has no prejudice. But but for the error, I would have had a lower sentence. And to get to that is a long chain of circumstances. He's saying the district court erred in the career offender guideline in July of 2016. And then he said, well, the Hinkle decision in August of 2016 shows that it was an error. So the chain of circumstances is, if there wouldn't have been an appeal waiver, then without the waiver, then I could have reversed the conviction on appeal. At least I could have had a chance to do that. But you look at the, at the, even the pre-Davlis substantial rights, is that it does the Rule 11 error affect the outcome in the district court? The outcome in the district court wasn't affected. The outcome of the district court's error was the fact that counsel didn't object under Mathis or anticipate Hinkle. The probation officer didn't anticipate Hinkle. He could have, he could have debriefed and gotten a much lower sentence. The, the, the, the, the, the, out, doesn't affect the outcome of the district court proceedings. It only, it only relates to what happens in the appellate court, which is not the test. It's, there's a principle that when there's intervening causes that, that, that but-for causation can't be established. And he needs to establish the but-for causation. And, and what he, what's in between are all his errors of defense counsel and all the, the, the possible errors of the probation officer in failing to, to anticipate Hinkle. So, I, I, I think his, I, I, I, I do disagree. I think that the, I think that there is no prejudice of substantial rights as regard to the Rule 11 evident error causing that in, in the district court. I think that's all I wanted to cover, Your Honor. Thank you. Thank you, Mr. Stelmach. Mr. Comfrey, Bible. Thank you, Your Honor. Davila, the Rule 11 error was the magistrate judge. And what the court found important, because it said we have to focus on the particular circumstances of the particular plea, the court found it important that he didn't, Mr. Davila didn't plead guilty until three months later. So, I don't know what, if there's a set answer to your question, Judge Barksdale, I think it would, I think that we have to look at the judge who intruded and when, when the plea was entered. And here the plea was entered without, with the agreement almost immediately afterwards. So, I think if that cuts any way, it cuts in Mr. Draper's favor. I don't believe the record shows that Mr. Draper said he didn't know about offers, but that he didn't see it. It's a small difference, but I think a significant one. Judge Higginson, I think that, that maybe there's a difference between commendable and well-intentioned. And I think the judge may very well have been well-intentioned, but I think you hit the key point. When you command a plea without a plea offer agreement, none's been disclosed, the judge shouldn't be asking about it. In other circumstances, as I said in Judge Smith's last question, there may be circumstances that I wouldn't say there's a flat rule the judge can't ask. But you're right, there is this tension, but this tension is at its height when you come in to plead without a plea agreement. Why is the court asking that? It cannot be that Rule 11 and actual criminal proceedings have been superseded by the fear of a possible habeas down the road. And that's essentially what the government's position would be if we have to clear this up and preclude ineffective assistance of counsel. That's not the purpose of the Rule 11 hearing. We have clear rules for Rule 11 hearing, and they were violated in this case. Yeah, I mean, what is it now? 98% of all cases by plea? I think in federal courts, something like 97%, 98%, and 90% for states. We have two big worries. We don't want courts signaling to defendants, you ought to do it. At the same time, we really, Frye has told us, you absolutely, you know, you have to make sure a defendant has heard every possible offer. And so, I'm not sure I'd diminish the habeas ineffectiveness side. That's a real problem courts are being told to police, to make sure the defendant is getting the, you know, making, getting the best deal. I think they're being told to police it in the way that Frye suggests and by following Rule 11. And what Frye suggests again, as I said, is that they can memorialize it, they can be extended in writing, and they can be submitted to the court. So, they're in the record of the court. So, if there is a habeas filed later, that's all there. But what, and see what, I will tell you about my experience in the Western District. Since Lafler and Frye, the government has started filing in many cases, motions for a Lafler hearing. Lafler hearing? Yes, whether the gentleman's going to trial or whether he's going to plead. And this is putting pressure. I filed objections, responses to it and got nowhere. The courts generally hold them. They generally say, well, I've conveyed all the offers. This is creating an environment. Well, one of those is going to come up to us as participating in the plea. That'll actually give us much more factual. Well, I would hope so. But I think, I think he did participate in this plea. I think that the precedent tells you to look at the context. The precedent tells you to look at how it might have affected the defendant's mind. The record shows, you can see the workings of Mr. Draper's mind. He's saying, I'm doing something wrong. I'm doing something wrong. The judge wants to talk about plea agreements. And I thought I was, I own the first page of the transcript. I plead guilty, Your Honor. And for some reason, we spend 10 more pages talking about agreements. The judge is saying. You know, also, as a defense attorney, it's hard to see an error when a judge just says, counsel, go talk to your client. That seems like a pretty plain, vanilla thing to do. May I? Yeah. Well, it's a. Had that been, had that been the beginning, we would be fine. I don't think I could have written this brief and made this argument if that had happened at the beginning. That happens on page 99 or 100 after 10 pages of discussion. Judge Smith, did you have a question? No, that's that's all. Thank you. Thank you, Your Honor. Thank you. Case is under submission. And Mr. Lynch, we noticed that your court appointed and we wish to thank you as always for your willingness to take the appointment and for your good work on behalf of your client.